## CONTO v. FRANKLIN COUNTY.

(Circuit Court of Appeals, Seventh Circuit. April 26, 1921.)

No. 2905.

Counties ⬦⟹148—Not liable for mob violence within city.

Without reference to whether or not Laws Ill. 1905, p. 190, providing in section 4 that any person suffering material damage to property or injury to person by a mob shall have an action against the county or city in which such injury is inflicted, is in pari materia with Laws Ill. 1887, p. 237, providing that, where property is destroyed by a mob, "the city, or if not in a city, then the county in which such property was destroyed shall be liable," a county is not liable under such section 4 for damages for personal injuries suffered at the hands of a mob within a city.

In Error to the District Court of the United States for the Eastern District of Illinois.

Action by Dominick Conto against the County of Franklin. Judgment for defendant, and plaintiff brings error. Affirmed.

Ira E. Westbrook, of Chicago, Ill., for plaintiff in error.
Roy C. Martin, of Benton, Ill., for defendant in error.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. The declaration charges that in the city of West Frankfort, Franklin county, Ill., a mob of more than five persons, assembled for the unlawful purpose of doing violence to plaintiff in error (a nonresident), who was supposed to have been guilty of a violation of the law, and for the purpose of unlawfully exercising correctional powers over him, attacked him, doing him personal injury, to his damage of $3,000. Franklin county, the defendant in error, demurred on the ground that, under the statute authorizing such action to be brought, action against a county will not lie where the occurrence was within a city. Demurrer was sustained, and plaintiff in error, electing to stand by his declaration, judgment was given against him.

The statute under which the suit was brought was passed in 1905 (Laws 1905, p. 190), and is entitled "An act to suppress mob violence." Section 1 provides that five or more persons assembled for the unlawful purpose of offering violence to the person or property of one supposed to have been guilty of a violation of law, or for unlawfully exercising corrective or regulative power over any person by violence, shall be deemed a "mob." Section 3 prescribes penalty against those who compose a mob with intent to inflict injury to person or property of any such person, and section 4 prescribes further penalties against those composing such a mob who inflict material or serious injury to such person or his property, and the last clause of this section provides:

"And any person so suffering material damage to property or injury to person by a mob shall have an action against the county or city in which such injury is inflicted, for such damages as he may sustain, to an amount not exceeding five thousand dollars."

---

Section 5 makes provision for recovery by the dependents of one who has been lynched by such a mob, and section 6 makes it the duty of the Governor to remove from office the sheriff of any county from whose custody any person is taken and lynched.

The sole question is upon the construction of the clause quoted from section 4—whether or not one so injured within a city may at his option sue either the city or the county. We have been referred to no decisions in Illinois which consider this question. A long-existing similarly worded statute in New York has been referred to, but we can find no decision of that state wherein the proposition is decided or considered. In 1887 (Laws Ill. 1887, p. 237) there was passed an act entitled "An act to indemnify the owners of property for damages occasioned by mobs and riots," the first section of which provides that, where property is destroyed by any mob composed of twelve or more persons, "the city, or if not in a city, then the county in which such property was destroyed shall be liable * * * for three-fourths of the damages sustained by reason thereof." The other six sections of the act make detailed provisions respecting the liability and its enforcement.

From the reading of these acts it would seem that the 1887 act is of remedial character, while that of 1905 is penal. The first gives right of action only for property damage, while the last penalizes the individuals comprising the mob as well as city or county wherein injury to person or property is inflicted. The first gives right of action in all cases where the damage is caused by the mob; the last gives the right of recovery for property damage only where the mob is organized for the particular purpose indicated by the act. Instances are conceivable in which either act might be invoked to recover property damage, but the two acts differ so greatly that it cannot be said, nor is it contended, that by implication the first adopted was repealed by the last. In the first act it is plainly stated that, if the damage occurred in a city, the city is liable, and, if outside of a city, the liability is on the county. It is contended for defendant in error that the statutes are in pari materia, and that in that of 1905 there must be read that part of section 1 of the first act which makes the county liable only where the damage was not inflicted within a city therein. But in view of the penal character of the 1905 act, as well as the mainly different subjects and elements of liability therein provided for, as compared with the 1887 act, we think the rule in pari materia is hardly applicable here. We see no reason for importing into this act that part of the 1887 law, any more than we do to further engraft upon it the limitations as to notice and commencement of suit as found in the act of 1887.

But, considering the 1905 act without reference to the other, may it fairly be said to warrant the construction that in all cases arising within a city the plaintiff has the option to sue either city or county? While it was undoubtedly within the legislative power to prescribe upon which the liability shall rest, there would be much reason and justice in an enactment making the city alone liable if the occurrence was within its limits, and the county only if happening outside of the limits of cities therein. An Illinois city must be a more or less compact community having a population when organized of not less than 1,000. At-

taching to the urban dignity are duties and obligations imposed by law, additional to those which the same community sustains as a part of the county. There are city officers, including police, charged by law with the special duty of preserving the peace within the city. While the duties of the sheriff of a county as a peace officer are coextensive with the county's borders, the city government has been too long and well recognized as a sort of imperium in imperio to permit courts to close their eyes to that condition. Generally the instrumentalities of the city government are primarily relied upon to preserve the peace within the cities; and to that end these have their separate police courts and jails, and those other means at hand for nipping in the bud incipient riots, which too often grow and spread, unless promptly checked by the authorities with whom they first come in contact. Here, then, are conditions under which neglect of the city authorities to do their full duty may well be the primary cause of the damage for which the action is given. And in such case it would be unfair to visit responsibility upon the entire county for the shortcomings of a city and its officers. While perhaps no rule could be adopted which would work out exact justice in every case, if it were held that in every instance the county may be held liable, few, indeed, would be the cases where the city, though the primary cause of the damage, but ordinarily (though not necessarily) less able than the county to bear the financial burden of the liability, would be sued. For all practical purposes the right of action might then have been given against the county alone.

This situation is helpful in determining what was the legislative intent of the expression "shall have action against the county or city in which the damage shall have been inflicted." The coincidental fact that every city is of necessity within the border of some county or counties should not, in our view, be considered as conferring on plaintiffs suing under this act the option of proceeding against city or county. A side light upon the proposition may be found in the fact that in Illinois there is statutory provision for cities lying within more than one county. In case of the damage occurring within such a city, would the plaintiff have further election among the counties of which it is a part, against which to bring the action? We do not think such a result was intended, and are sufficiently assured that the true intent and meaning of this somewhat equivocal phrase of the act is to authorize the action against the city alone where the damage is therein inflicted, and against the county alone if inflicted within its borders outside of its cities.

The judgment is affirmed.